TRULINCS 10365265 - LEONARD, RAYMOND - Unit: BRO-H-C

----

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NEW YORK

----

UNITED STATES OF AMERICA

VS.                                                         Case No: 19-CR-365-WFK

RAYMOND LEONARD

----

MOTION TO DISMISS THE INDICTMENT
(Filed Under 8 USC Section 1326(d))

----

Defendant RAYMOND LEONARD ("defendant"), files this motion in the above referenced case and requests this Honorable Court to Dismiss the Indictment charging him for violation of Illegal Reentry Offense under 8 USC Section 1326(a). In support thereof, defendant respectfully avers the following:

I. STATEMENT OF THE CASE

Defendant was born in 1970 in Guyana. He entered the United States as a Lawful Permanent Resident (LPR) in 1982, when he was twelve years old.

At the age of 16, on December 10, 1986, he was arrested along with two other 16 year old kids for violating criminal possession of Stolen Property in the fourth degree, under New York Penal Law 165.45, a Class E Felony. See Exhibit 1. As to the facts of the case, defendant was found to be in a vehicle along with two other kids, one of which was holding a screw-driver in a failed attempt to take the stereo system from the car. He pled guilty to the Class E Felony in Nassau County Court. But since he was a juvenile at the time of offense, he was sentenced under New York Youthful Offender Adjudication for a Maximum of 30 Days imprisonment. See Exhibit 1.

TRULINCS 10365265 - LEONARD, RAYMOND - Unit: BRO-H-C

-----------------------------------------------------------------------------------------

On February 14, 1995, defendant was convicted upon a plea of guilty for the offense of attempted assault in the second degree in violation of Section 120.05 of New York Penal Law. See Exhibit 2. The facts of that case reveal that he was present when a quarrel broke between two groups and a person sustained stab wounds. The Law Enforcement charged a number of individuals in that case, but since defendant was not the perpetrator of stabbing nor he had possession of any weapon, defendant was offered a plea of attempt offense for the second degree assault, without any specific subdivision of 120.05. See Exhibit 2. His offense was considered as non-violent, and therefore he was placed under the New York State SHOCK Incarceration Program (SIP). See Exhibit 3. He was released from custody after 6 months of successfully completing the SHOCK program.

On November 24, 1995, the Immigration and Naturalization Service ("INS") issued defendant an Order to Show Cause ("OSC") charging him deportability under INA 241(a)(2)(A)(ii), as amended. It alleged that defendant was convicted of two crimes involving moral turpitude ("CIMT") not arising out of a single scheme of criminal misconduct. On January 6, 1998, the INS issued an additional charge against defendant under INA 241(a)(2)(A)(iii), as amended, in that at any time after entry, he has been convicted of an aggravated felony. More specifically, the aggravated felony forming the basis of deportation was stated to be the New York Second Degree Assault conviction.

Defendant hired a counsel to represent him in the Immigration Proceedings. Some six years after the proceedings, on December 17, 2002, the Immigration Judge ("IJ") rendered an oral decision, and found that defendant was NOT an aggravated felon but denied him a discretionary waiver under INA 212(c), and ordered him to be deported for being convicted of two crimes involving moral turpitude under 8 USC 1251(a)(2)(A)(ii). Defendant timely filed an appeal to the Bureau of Immigration Appeals ("BIA"). On March 1, 2004, the BIA affirmed IJ's order and dismissed the appeal. See Exhibit 4-5.

Defendant stayed in United States until 2010, when he was arrested and deported to Guyana. Some time thereafter, he returned to United States to be with his family (mother, wife and sons). He was found to be in United States in 2018 and a sealed complaint was filed on February 13, 2018, charging him violation of

Case 1:19-cr-00365-WFK   Document 14   Filed 11/21/19   Page 3 of 16 PageID #: 39

RULINCS 10365265 - LEONARD, RAYMOND - Unit: BRO-H-C
----------------------------------------------------------------------------

8 USC 1326(a). The complaint incorrectly stated that defendant was convicted of "aggravated felony" prior to deportation under 8 USC 1326(b)(2). Defendant was arrested on July 10, 2019 based on the criminal complaint. An indictment was filed on August 13, 2019, charging him for violating 8 USC 1326(a) and 1326(b)(2) (No: 19-cr-365). Once again, the indictment mirrored the incorrect assumption that defendant was previously convicted of aggravated felony), when the actual deportation order was based on two crimes involving moral turpitude.**

If one believes in luck, defendant has a luck of a turkey on Thanksgiving day. His criminal charges in 1986 and 1995 arose from just being at a wrong place, at a wrong time, and hanging out with a wrong crowd. Perhaps being a foreigner in the United States, he was looking to make more "friends" and being accepted. In the Immigration proceeding, he was more unfortunate and had a counsel who did not comprehend the rudimentary tenets of the immigration law. The immigration counsel conceded defendant's deportability based on the two offenses which were in fact legally invalid. Any competent counsel would have objected to the inclusion of juvenile delinquency proceeding as basis of immigration law, a principle established for over half a century. As explained in this motion, counsel's ineffectiveness resulted in the defective deportation order, and defendant's instant offense charging him for illegal reentry should be dismissed.

---

** Defendant acknowledges that 8 USC 1326(b) is a penalty provision and does not define a separate substantive offense. This conviction of an aggravated felony in not technically an element of charged offense of Illegal Re-entry under 8 USC 1326(a) and need not be alleged in the indictment. Almendarez-Torres V. United States. 523 US 224 (1998).

TRULINCS 10365265 - LEONARD, RAYMOND - Unit: BRO-H-C

---

II. MOTION TO DISMISS FILED UNDER TITLE 8 USC 1326(d): STANDARD OF REVIEW

(A) Defendant's request for consideration of this Pro Se Filing:

A criminal defendant has no constitutional or statutory right to represent himself as co-counsel with his own attorney. United States v. Tutino, 883 F.2d 1125, 1141 (2nd Cir 1996). But the decision to permit such "hybrid representation lies solely within the discretion of the trial court." Id at 1141. A court can permit hybrid representation if a defendant offers a "compelling reason" or shows that "the interests of justice would be served by a defendant's supplementation of the legal services provided by his retained counsel." United States v. Swinton, 400 F. Supp. 805, 806 (SNDY 1975).

In instant case, defendant's counsel is unwilling to file a motion to dismiss the indictment even though defendant has made repeated requests to her. Defendant has been incarcerated for over four months and has been under the shroud of deportation for over 23 years due to an error which was overlooked by every attorney and the court. Defendant's instant motion makes an compelling reason and further demonstrates that interests of justice will be served by permitting him to file this pro se motion.

(B) Standard for Dismissal of an Indictment

"A motion to dismiss an indictment must satisfy a high standard." United States v. Brooks, 2009 U.S. Dist LEXIS 99997, at 2 (EDNY 2009). This is because an "indictment ... need not be perfect, and common sense and reason are more important than technicalities." United States v. Bustos de la Pava, 268 F.3d 157, 162 (2nd Cir 2001). "Essentially, the indictment must ... be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Id Brooks, at 2 (citing Fed.R.Crim. Proc. 7(c)(1)).

(C) Standard for Challenging the Validity of a Deportation Order

The Immigration and Nationality Act, 8 USC 1326(a), criminalizes the entry, attempted entry or presence of a deported or removed alien in the United States. However, the statute affords an alien the ability to defend against a charge of illegally reentering the United States following deportation by challenging the

validity of the underlying deportation order on which the charge is predicated. 8 USC 1326(d). See United States v. Scott, 394 F.3d 111, 116 (2nd Cir 2005); See also United States v. Copeland, 376 F.3d 61, 66 (2nd Cir 2004); United States v. Gonzalez-Roque, 301 F.3d 39, 45 (2nd Cir 2002). The Supreme Court first clarified this principle in United States v. Mendoza-Lopez, stating that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding." 481 U.S. 828, 837-38 (1987).

By an amendment passed in 1996, "Congress effectively codified the holding of Mendoza-Lopez in 8 USC 1326(d)," Scott, 394 F.3d at 116. The statute provides that, in order for a defendant to collaterally attack a deportation order successfully, and thereby the underlying offense of illegal reentry, he must demonstrate that: (1) any available administrative remedies have been exhausted; (2) he was improperly deprived of the opportunity for judicial review of the deportation proceeding at which the order was issued; and (3) the entry of the order was fundamentally unfair. 8 USC 1326(d). The Second Circuit has further held that "a defendant may collaterally attack an order of deportation on due process grounds where ... the order becomes an element of a criminal offense." Gonzalez-Roque, 301 F.3d at 45.

The Second Circuit has explained the hurdles a defendant must overcome if he is to succeed in collaterally attacking the validity of a deportation order under 8 USC 1326(d). Exhaustion of Administrative remedies generally require a non-citizen to appeal the order of an immigration judge to the BIA. See United States v. Lopez, 445 F.3d 90, 93 (2nd Cir 2006). Defendant timely appealed his deportation order to the BIA and thus satisfies the exhaustion requirement of section 1326(d)(1). Deprivation of judicial review to satisfy the 1326(d)(2) requirement can be established be demonstrating ineffective assistance of counsel. United States v. Perez, 213 F. Supp 2d 229, 232-33 (EDNY 2002). In defendant's case, due to the ineffective assistance of counsel, seeking habeas review would have been unrealistic. See Copeland, 376 F.3d at 68.

In order for a defendant to substantiate a deportation order's fundamental unfairness under 1326(d)(3), he must show "both a fundamental procedural error and prejudice resulting from that error." United States v. Williams, 733 F.3d 448, 455 (2nd Cir 2013). In order to show prejudice, the defendant must establish that, "absent the procedural errors, he would not have been removed." United States v. Fernandez-Antonia,

TRULINCS 10365265 - LEONARD, RAYMOND - Unit: BRO-H-C

--------------------------------------------------------------------------------

278 F.3d 150, 159 (2nd Cir 2002). Although the Second Circuit declined "to state the quantum of proof necessary for a defendant to succeed in his demonstration of prejudice on collateral review," the Court suggested that a showing that there was a reasonable likelihood that an alien would not have been deported or a plausible showing of such might be sufficient. Id at 159-60.

An ineffective assistance of counsel claim challenging a deportation order may be addressed under the fundamental unfairness prong of 1326(d)(3). United States v. Scott, 394 F.3d at 113. Moreover, ineffective assistance of counsel under the fundamental unfairness prong of 1326(d)(3) may serve as grounds for a court to excuse a defendant's failure to exhaust his administrative remedies and seek judicial review. See United States v. Cerna, 603 F.3d 32, 35-36 (2nd Cir 2010)("For non-citizens at the risk of deportation, the consequences of inadequate counsel can be devastating. Because such incompetence undermines the fair and effective administration of justice, courts must be ever vigilant."); See Also United States v. Kim, 2014 US Dist LEXIS 141865, at 3 (D.Vt. Aug 18, 2014) ("Under Second Circuit law, ineffective assistance alone may satisfy 1326(d)").

"An [individual subject to removal proceedings] enjoys so specific right to counsel, but only a general right to due process of law under the Fifth Amendment of the Constitution." Zheng v. U.S. Dept. of Justice, 409 F.3d 43, 46 (2nd Cir 2005); Saleh v. U.S. Dept of Justice, 962 F.2d 234, 241 (2nd Cir 1992). "In order to prevail on an ineffectiveness claim, a defendant must show that his counsel's performance was so ineffective as to have impugned upon the fundamental fairness of the hearing." Zheng, 409 F.3d at 46. See also Aris v. Mukasey, 517 F.3d 595, 596 (2nd Cir 2008) ("With disturbing frequency, this Court encounters evidence of ineffective representation by attorneys retained by immigrants seeking legal status in this country.").

Here, the defendant proves that the removal order was facially deficient his his 1987 juvenile delinquency of possession of stolen property cannot be used for immigration purposes and the 1995 conviction of assault is categorically not a CIMT or aggravated felony. Moreover, defendant also received ineffective assistance of counsel during his removal proceedings because the attorney failed to challenge any of the convictions as legally invalid.

III. DEFENDANT'S JUVENILE DELINQUENCY CANNOT BE USED IN DEPORTATION PROCEEDING

Defendant's criminal record reflects that at on March 1987, the age of 16, he was convicted of criminal possession of stolen property in the fourth degree under New York Penal Code Section 165.45, which states in pertinent part: "A person is guilty of criminal possession of stolen property in the fourth degree when he knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof, and when...". This section is therefore held categorically as a Crime Involving Moral Turpitude ("CIMT"). See Michel v. INS, 206 F.3d 253, 263-64 (2nd. Cir 2000). In 1996, the Congress amended the Immigration Act to include such possession of stolen property within the definition of "aggravated felony" in enacting section 101(a)(43)(G), Codified as 8 USC 1101(a)(43)(G)(adding theft offense (including receipt of stolen property)). But such an amendment to the definition of offense is held not to be applied retroactively. See Vartelas v. Holder, 132 S.Ct. 1479, 1484 (2012).

But regardless the qualification of New York offense as CIMT or Aggravated Felony, it should NOT have been used against the defendant, as he was charged and convicted of that offense when he was only 16 years old. See Exhibit 1(Defendant's DOB is July 25, 1970; the offense date is December 10, 1986 and the adjudication date is March 16, 1987). The Immigration courts have consistently held that juvenile delinquency proceedings are not criminal proceedings, the acts of juvenile delinquency are not crimes, and that findings of juvenile delinquency are not convictions for immigration purposes. See, Matter of Devison-Charles, 22 I&N Dec. 1362 (BIA 2000). see also Matter of De La Nues, 18 I&N Dec, 140 (1981) (applying FJDA Standards to determine whether an act is a delinquency or a crime); Matter of Ramirez-Rivero, 18 I&N Dec. 135 (BIA 1981)(same); Matter of F-, 4 I&N Dec. 726 (BIA 1952)(ruling that an offense committed before the offender's 18th birthday was an act of juvenile delinquency, not a crime); Matter of A-, 3 I&N Dec. 368, 371 (BIA 1948) (Stating that juvenile delinquency is not a deportable or excludable offense).

More importantly, the BIA has stated, "we have also held that the standards established by Congress, as

embodied in the FJDA [Federal Juvenile Delinquency ACT], govern whether an offense is to be considered an act of delinquency or a crime." Devison-Charles at 1365. The FJDA defines a "juvenile" as "a person who has not attained his eighteenth birthday, or for the purpose of proceedings as disposition under this chapter for an alleged act of juvenile delinquency, a person who has not attained his twenty-first birthday," and "juvenile delinquency" as "the violation of a law of the United States committed by a person prior to his eighteenth birthday which would have been a crime if committed by an adult." Ramirez-Rivero at 137 (citing 18 USC 5031). The FJDA makes it clear that a juvenile delinquency proceeding results in the adjudication of a status rather than a conviction for a crime. See 18 USC 5031-5032. The Board of Immigration Appeals has also explained that pursuant to the FJDA: Until a person is 21 years of age, he or she can be charged as a juvenile for an offense committed while under 18 years of age. Thus, FJDA applies to any person below the age of 21 who has committed an offense before reaching his or her 18th birthday. Devison-Charles at 1367.

Moreover, under New York law, the adjudication of "youthful offender" ("YO") is available to eligible youth who are convicted of committing their crimes when they were at least 16 and less than 19 years old. See. NY Crim Proc Law 720.10 & 720.20. But a "youthful offender adjudication is not a judgment for a crime or any other offense." NY Crim Proc Law 720.35(1). The New York Court of Appeals has interpreted a YO adjudication as replacing the underlying conviction. See People v. Calderon, 79 NY2d 61, 67, 580 NYS2d 163 (NY 1992) (" As the youthful offender law makes clear, the youthful offender finding is substituted for, and becomes, in essence, the conviction of the eligible youth."). If the youth is tried in a local criminal court, it must be a single judge trial, and the court "must" sentence him as a youthful offender, NY Crim Proc Law 720.20, and in addition to the usual benefits of this status, the term of incarceration cannot exceed six months. Crim Proc Law 720.25 (now CPL 60.02). For this reason, defendant received a maximum of 30 days of prison sentence rather than 18 months - 4 year sentence as prescribed for violations of Class E felonies.

In New York, once a court determines a person is youthful offender, the court "must direct that the conviction be deemed vacated and replaced by a youthful offender finding." NY Crim. Proc Law 720.20(3). All official records and papers relating to youthful offender adjudications are designated as "confidential" and may not

be made available to any person or agency with certain exceptions. Id 720.35(2). Among the exceptions are "an institution to which such youth has been committed, the division of parole and a probation department if NY state that requires such official records and papers for the purpose of carrying out duties specifically authorized by law." Id.

The New York courts have made clear that "the youthful offender provisions of the Criminal Procedure Law emanate from a legislative desire not to stigmatize youth between ages 16 and 19 with criminal records triggered by hasty or thoughtless acts which, although crimes, may not have been serious deeds of hardened criminals." People v. Victor J, 724 NYS.2d 161, 163 (App. Div 2001). The New York courts may consider YO adjudications when evaluating criminal history and in parole and bail determinations for future crimes. See United States v. Cuello, 357 F.3d 162, 166 (2nd Cir 2004) (explaining YO adjudication scheme). Thus, even when the actual records are sealed, the details of charges may be revealed when a person's criminal history is checked by the law enforcement.

It was a grave error on the part of INS Officer, defendant's immigration counsel and even on part of the Immigration Judge, to find defendant's juvenile delinquency as a deportable CIMT offense. The record demonstrates that defendant was never "convicted" for immigration purposes and defendant's counsel was grossly ineffective for not even noticing defendant's age at the time of charged offense. For any counsel with even boilerplate knowledge of immigration law would have known that acts of juvenile delinquency are not convictions for immigration purposes.

TRULINCS 10365265 - LEONARD, RAYMOND - Unit: BRO-H-C

---

IV. DEFENDANT'S STATE ASSAULT CONVICTION IS NEITHER "AGGRAVATED FELONY" AND NOR "CRIME INVOLVING MORAL TURPITUDE" UNDER CATEGORICAL APPROACH

Defendant was convicted under New York Penal Law section 120.05 which states that: "A person is guilty of assault in the second degree when...," and enumerates eleven different subdivisions where a person can be charged for the offense. As the court can notice, defendant's conviction record states that he pled guilty to the second degree assault without any subdivision. See Exhibit 2. The Immigration Judge correctly found that defendant's assault conviction was not an aggravated felony and recent developments in law further prove the correctness of IJ's decision. But, the counsel failed to bring to the IJ's attention that the Second Circuit has already held in 2001 that conviction under NY Penal Law 120.05 is also categorically not a crime involving moral turpitude (CIMT).

(A) Conviction of 120.05 is not a categorically "Aggravated Felony"

As relevant here, an aggravated felony includes and attempt to commit a "crime of violence" as defined by 18 USC 16 for which the term of imprisonment is at least one year. See 8 USC 1101)(a)(43)(F), (U). Title 18 USC section 16, in turn, divides the definition of "crime of violence" into two parts. See Sessions v. Dimaya, 138 S.Ct 1204, 1211 (2018). Section 16(b)'s definition of crime of violence - the so called "residual clause"- was recently declared unconstitutional by the Supreme Court. See Dimaya, 138 S.Ct. at 1223.

Defendant's assault conviction is categorically not a crime of violence as NY Penal Law 120.05 lists a number of subdivisions which criminalize omissions, recklessness and accidental or unintentional conduct. Under New York law, a defendant can be liable for omissions where the defendant had a duty to act. NY Penal Law 15.10. See People v. Gladden, 462 NYS.2d 115 (NY Sup Ct. 1983)(Setting forth what a prosecutor must show to establish that assault was committed by "an omission or a failure to act"). The Second Circuit in Chrzanoski v. Ashcroft, 327 F.3d 188, 191-92 (2nd Cir 2003) analyzed whether a similar statute under Connecticut law constituted a "crime of violence" (thereby an aggravated felony), and held that because the statute allows causation of injury by deliberate omissions, it was not categorically a crime of violence. Id at 196.

TRULINCS 10365265 - LEONARD, RAYMOND - Unit: BRO-H-C

----

Courts have held that several subdivisions of 120.05 are not a "crime of violence." See Grant v. United States, 2017 US Dist LEXIS 103868, at 4-5; No 06-cr-732 (EDNY, July 5, 2017)(explaining that a conviction under subdivisions (1), (3), (4), (5) and (6) of 120.05 does not constitute a "crime of violence"); United States v. Poindexter, 2016 US Dist. LEXIS 154589, at 4-5; 97-cr-079 (ED Va Nov 7, 2016)(discussing 120.05 subdivision(1))(citing Chrzanoski); see also Garcia v. Gonzales, 455 F.3d 465 (4th Cir 2006) (Subdivision (4) of 120.05 is not a crime of violence); Persaud v. McElroy, 225 F.Supp.2d 420-422 (SDNY 2002)(Subdivision (6) of 120.05 does not require use of force).

Furthermore, defendant served his sentence in the New York State SHOCK Incarceration program, which allows participation only if the convicted offenses were non-violent in nature. The SHOCK program, created by New York legislature n 1987, provides a six-month voluntary alternative to traditional incarceration for selected youthful, non-violent offenders. Modeled after military "boot camps," the highly structured, rigorous program is intended to instill a sense of discipline and responsibility in participating inmates. Upon successful completion is the program, defendant was released from custody only after six months.

(B) Conviction of 120.05 is categorically not a "Crime Involving Moral Turpitude"

According to Immigration law, "moral turpitude" historically has referred to conduct which is "inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or society on general." Matter of Torres-Varela, 23 I&N Dec. 78, 83 (BIA 2001). Thus, courts look to the element of intent, specifically an evil or vicious intent, in the determination of whether a crime involves moral turpitude. See Michel v. INS, 206 F.3d 252, 263 (2nd Cir 2000)("Among the tests to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or corrupt mind"). According to BIA, a simple assault is not a crime of moral turpitude, but assault with a deadly weapon is; a conviction for misconduct that caused bodily injury is not a crime involving moral turpitude, but where the conduct caused serious bodily injury, it is. See Toutounjian v. INS, 959 F. Supp. 598, 603-04 (SDNY 1997).

It is the practice in the Second Circuit to perform a categorical review of whether the crime involves moral turpitude. This means that the court looks only to the statute and not to the actual circumstances of the

TRULINCS 10365265 - LEONARD, RAYMOND - Unit: BRO-H-C

---

crime in a particular case. See Dalton v. Ashcroft, 257 F.3d 200, 204 (2nd Cir 2001)("in this circuit, we have long endorsed categorical analysis of criminal statutes in the context of deportation orders for crimes of moral turpitude."). "The categorical approach focuses on the intrinsic nature of the offense rather than on the factual circumstances surrounding any particular violation." Dickson v. Ashcroft, 346 F.3d 44, 48 (2nd Cir 2003). Applying this categorical approach, courts in second circuit have concluded NY Penal Law 120.05 is categorically not a CIMT. See Singh v. US Dept of Homeland Security, 526 F.3d 72 (2nd Cir 2001)(Subdivision (4) of 120.05 is not CIMT); Gill v. INS, 420 F.3d 82, 90-91 (2nd Cir 2005)(same); Zaranska v. US Dept. of Homeland Security, 400 F. Supp. 2d 500 (EDNY 2005)(Subdivisions (3) and (6) of 120.05 are not CIMT).

(C) Government bears the burden of proof in a deportation case.

In defendant's case, the Immigration judge should have determined whether defendant was convicted of a specific subdivision of 120.05, and if so, whether that subdivision constituted a crime involving moral turpitude. Since the defendant never pled guilty to any subdivision of the assault offense, the government cannot present any document indicating which particular subdivision qualifies as a deportable offense. The court cannot apply the modified categorical approach and may not conclude that defendant's conviction "rested upon anything more that the least of [the] acts" of the statute's subdivisions. United States v. Johnson I, 559 US 133, 137 (2010).

Moreover, as the defendant was a lawful permanent resident, the government bears the burden of proof, which it could only meet "by adducing 'clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true.'" Francis v. Gonzales, 442 F.3d 131, 138 (2nd Cir 2006)(quoting Woodby v. INS, 385 US 276 (1966). see also Berenyi v. Immigration Dir., 385 US 630, 636-37 (1967)("When the Government seeks to strip a person of citizenship already acquired, or deport a resident alien and send him from our shores, it carries the heavy burden of proving its case by clear, unequivocal, and convincing evidence. ... That status, once granted, cannot lightly be taken away.")(footnotes omitted).

-12-

TRULINCS 10365265 - LEONARD, RAYMOND - Unit: BRO-H-C

----------------------------------------------------------------------

Here, the government never presented any documentation concerning the particular subdivision of defendant's New York assault conviction. And because the existing documents fail to reveal the statutory provision under which defendant's conviction occurred, the reviewing court cannot determine whether that conviction constitutes an aggravated felony or a CIMT. Cf. Jeune v. Atty. Gen., 476 F.3d 199, 201 (3rd Cir 2007)(stating that the 'practically non-existent record in this case cannot support an aggravated felony determination."); Thomas v. Atty. Gen., 625 F.3d 134, 146 (3rd Cir 2010)("exercis[ing] caution" where the documentation supporting defendant's two guilty pleas is sparse.).

V. DEFENDANT'S DEPORTATION PROCEEDINGS WERE FUNDAMENTALLY UNFAIR

To establish a deportation order's fundamental unfairness under 1326(d)(3), a defendant mush show "both fundamental procedural error and prejudice resulting from that error." United States v. Williams, 722 F.3d 448, 455 (2nd Cir 2013) (quoting Cerna, 603 F.3d at 40-41, Scott, 394 F.3d at 117). "In other words, he must show (1) that a competent attorney would have not made the error; and (2) a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id (Citing Cerna, 603 F.3d at 40-41).

In defendant's case, any competent Immigration Attorney would have recognized that a juvenile delinquency proceeding cannot be counted as any deportable offense under Immigration law. Such a prohibition has been established for over five decades in Immigration Jurisprudence. Also, any competent counsel, with a simple research of Federal Second Circuit Law would have found that the Court has already ruled that defendant's New York conviction of Second Degree assault under section 120.05 should be assessed under categorical approach and that in defendant's case, the government could not prove that his offense either qualified as CIMT or aggravated felony because defendant did not plead guilty to any subdivision of that divisible statute. Unknowledgeable to the existing law, counsel of course further failed to advise defendant about litigating these issues.

In the Second Circuit, "evidence of defense counsel's decision-making process sometimes demonstrates constitutional deficiency." Gernier v. Wells, 417 F.3d 305, 325 (2nd Cir 2005). The Second Circuit recognizes deficient performance where counsel has made a legal error or has a misunderstanding of the law. See, e.g. United States v. Hansel, 70 F.3d 6, 8 (2nd Cir 1995); See also, Gernier, 417 F.3d at 325 (collecting cases finding various kinds of deficient counsel performance.). Courts in Second Circuit have found procedural error where counsel failed to advise the defendant regarding basic tenets of immigration law. United States v. Gonzalez, 2015 US Dist LEXIS 69904, at 10 (SDNY 2015). "For non-citizens at risk of deportation the consequences of inadequate counsel can be devastating." Cerna, 603 F.3d at 36. "The importance of accurate legal advice for noncitizens accused of crimes has never been more important." Padilla v. Kentucky, 559 US 356, 364 (2010).

Case 1:19-cr-00365-WFK   Document 14   Filed 11/21/19   Page 15 of 16 PageID #: 51

TRULINCS 10365265 - LEONARD, RAYMOND - Unit: BRO-H-C
------------------------------------------------------------------------------------

Here, competent immigration counsel would not have mistaken the law upon conducting minimal research on the question of whether defendant's offenses were qualifying offenses or that his New York Second degree assault charge, which requires a categorical approach, was NOT a CIMT. See United States v. Lopez-Chavez, 757 F.3d 1033, 1042-43 (9th Cir 2014)(finding ineffective assistance of counsel in a deportation proceeding where counsel failed "to do the minimal research" that would have led to the conclusion of an issue for removability). In an era where courts "generally employ a 'categorical approach' to determine whether the state offense is comparable to an offense listed in the INA," Moncrieffe v. Holder, 569 US 184, 190 (2013), competent immigration counsel would have been aware of, or would have been able to ascertain quickly, that defendant's New York convictions were not CIMT. See Lopez-Chavez, 757 F.3d at 1043 ("It was therefore ineffective for an attorney to fail to pursue the open issue, just as it was ineffective to stipulate that the defendant had committed a deportable offense" when the case law indicated otherwise.)

Defendant can also demonstrate prejudice by showing that it was reasonably probable that, but for the Immigration Counsel's unprofessional errors, the result of the proceedings would have been different. See Williams, 733 F.3d at 455. "Prejudice in the context of 1326(d) is shown where there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Scott, 394 F.3d at 117 (quoting United States v. Copeland, 376 F.3d 61, 73 (2nd Cir 2004) (In turn quoting Strickland v. Washington, 466 US 668, 694 (1984)). "As the Supreme Court has defined it, 'a reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id.

To demonstrate prejudice, a removable person must establish that, "absent the procedural errors, he would not have been removed." Fernandez-Antonia, 278 F.3d at 159. Although the Second Circuit has declined "to state the quantum of proof necessary for [a defendant] to succeed in his demonstration of prejudice in collateral review," the Second Circuit has suggested that a showing that there was a reasonable likelihood that a removable person would not have been deported or a plausible showing of such might be sufficient. Id at 159-60. In defendant's case, if counsel would have raised objections to the impropriety of the charges considered for deportation, any Immigration Judge would have agreed to the established legal principles. Thus, defendant has demonstrated prejudice because there is a reasonable probability defendant ultimately would have been victorious had counsel provided effective representation in the deportation proceedings.

Case 1:19-cr-00365-WFK   Document 14   Filed 11/21/19   Page 16 of 16 PageID #: 52

TRULINCS 10365265 - LEONARD, RAYMOND - Unit: BRO-H-C
--------------------------------------------------------------------------------

VI. CONCLUSION AND RELIEF REQUESTED

Defendant's deportation was based on an erroneous determination that his state convictions supported removal. Had the counsel been effective in asking the Immigration Court to apply the correct standards, he would not have been found to be deportable, and the immigration proceedings would have been terminated. He would not have been unlawfully deported and finally would not have entered the country illegally. It is not too late for this court to correct the errors previously made in defendant's case, and defendant respectfully pleads the court to dismiss his Indictment.

Respectfully Submitted

Date: November 14, 2019

Raymond Leonard, Pro Se
Reg. No. 10365-265,
MDC Brooklyn, NY 11232

---

Certificate of Service

I, Raymond Leonard, hereby certify that true and correct copies of the foregoing Motion to Dismiss and Exhibits were mailed to the following address on November 14, 2019, via United States Mail, postage prepaid, by depositing the same in the prison mailbox.

Mr. Andrew Grubin
Assistant United States Attorney
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Date: November 14, 2019

Raymond Leonard

-16-