**Federal Defenders**
OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

April 6, 2020

**BY ECF and E-Mail**
The Honorable William F. Kuntz, II
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: <u>United States v. Raymond Leonard</u>, 19-cr-00365-WFK

Dear Judge Kuntz,

We write on behalf of Mr. Leonard to respectfully object to the Court's exclusion of time through September 8, 2020, request that he be appointed new counsel as soon as possible, and request that he be released temporarily during the pendency of the COVID-19 pandemic. Although Mr. Leonard has requested new counsel, he has authorized undersigned counsel to make the following motions.

**a. Motion for Appointment of Counsel and Objection to Exclusion of Time.**

We respectfully request that Mr. Leonard be appointed new counsel as soon as possible to avoid any undue delay in resolving his case. On January 21, 2020, Mr. Leonard informed the Court that he no longer wished to be represented by undersigned counsel. Minute Entry, Jan. 21, 2020. The Court asked Mr. Leonard to spend more time considering his request for new counsel and scheduled a status conference in 30 days. *Id.* After Mr. Leonard declined to execute an Order of Excludable Delay under the Speedy Trial Act, the Court deemed this matter a "complex case." *Id.* The docket entry indicates that this designation is pursuant to "18 U.S.C. § 3161(h)(l)(A),") which excludes a "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant." § 3161(h)(l)(A).

On February 21, 2020, Mr. Leonard renewed his request for new counsel and the Court "granted [his] motion and [indicated it] will appoint successor counsel from the CJA panel" at the status conference on April 8, 2020. Minute Entry, Feb. 21, 2020. Again, Mr. Leonard objected to the exclusion of time under the Speedy Trial Act; the Court reiterated its decision to

designate this matter a complex case, citing §3161(h)(l)(A) in the corresponding minute entry. *See* Minute Entry, Feb. 21, 2020.

On March 31, 2020, the Court *sua sponte* adjourned Mr. Leonard's status conference for four months citing the outbreak of COVID-19. Minute Entry, Mar. 31, 2020. The Court cited its "complex case" designation in excluding time through the next conference on September 8, 2020, again citing § 3161(h)(1)(A) in the corresponding docket entry. *Id.*

On behalf of Mr. Leonard, undersigned counsel hereby objects to the exclusion of time through September 8, 2020 and the Court's designation of this case as a complex matter pursuant to § 3161(h)(1)(A). For one, a single-defendant illegal reentry case that required one discovery production does not qualify as "complex" by any standard. Furthermore, § 3161(h)(1)(A) cannot justify any delay under the Speedy Trial Act here, as there have been no proceedings addressing Mr. Leonard's competence or physical capacity during the pendency of this case.

For all these reasons, we ask that Mr. Leonard be appointed new counsel so that his case may be heard as soon as possible, in accordance with his rights under the Speedy Trial Act.

**B. Motion for Bond.**

The Bail Reform Act provides for the "temporary release" of a person in pretrial custody "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). As courts have already recognized, "the obstacles the current public health crisis poses to the preparation of the Defendant's defense constitute a compelling reason under 18 U.S.C. § 3142(i)." *United States v. Stephens*, 15-CR-95 (AJN), Dkt. 2798 at 5, (S.D.N.Y. Mar. 19, 2020). Furthermore, there is no more "compelling reason" than Mr. Leonard's physical health, which is threatened by the COVID-19 outbreak. *See United States v. Rebollo-Andino*, 312 F. App'x 346, 348 (1st Cir. 2009) (explaining that a defendant who is denied bail "retains the ability to request[,] . . . in extraordinary circumstances, . . . temporary release under § 3142(i)" should future developments with respect to his medical conditions so warrant).

   *i.   The COVID-19 Pandemic*

On March 11, 2020, the World Health Organization officially classified COVID-19, a new strain of coronavirus, as a global pandemic.[1] On January 21, 2020, Washington State

---

[1] *WHO Characterizes COVID-19 as a Pandemic*, World Health Organization (Mar. 11, 2020), https://bit.ly/2W8dwpS.

announced the first confirmed case of coronavirus in the United States.[2] As of today, there are 357,036 cases in the United States and 10,522 deaths.[3]

The exponential rate of coronavirus infection is unparalleled. The first case of coronavirus in New York State was announced on March 1, 2020. Less than two weeks later, New York State reported 325 positive cases. To date, the state has amassed 131,239 confirmed cases, with 4,758 deaths.[4] New York now has more confirmed cases of coronavirus than any other state in the country. And the majority of those cases are in New York City, making it the national epicenter of the pandemic.[5]

In response to this public health crisis, Governor Andrew Cuomo declared a State of Emergency in New York State on March 7, 2020.[6] Mayor Bill de Blasio declared a State of Emergency in New York City on March 12, 2020, banning gatherings of over 500 people.[7] On March 20, 2020, Governor Cuomo directed all non-essential workers to work from home, requiring individuals to maintain 6 feet of distance between each other.[8] The same day, the Federal Emergency Management Agency (FEMA) declared New York "a major disaster."[9]

### ii. Conditions at the MDC Brooklyn

On March 21, 2020, an inmate at the MDC tested positive for the coronavirus.[10] The individual was brought to MDC from Rikers Island, passed the MDC's health screening, and "complained of chest pains . . . a few days after he arrived."[11] On April 2, 2020, the BOP "revealed to a New York federal judge [] that a Brooklyn federal prison had tested only two additional inmates —out of 1,700—after five staff members and one prisoner were found to be infected with the coronavirus."[12] "[G]overnment counsel admitted under questioning by U.S. Judge Rachel P. Kovner that the Metropolitan Detention Center in Brooklyn had done little testing after finding an inmate was positive for the virus, *despite featuring the single infection as*

---

[2] *First Patient With Wuhan Coronavirus Is Identified in the U.S.*, The New York Times (Jan. 21, 2020), https://www.nytimes.com/2020/01/21/health/cdc-coronavirus.html.
[3] *Coronavirus Map: Tracking the Spread of the Outbreak*, The New York Times (Apr. 6, 2020), https://nyti.ms/2U4kmud
[4] *Id.*
[5] *Coronavirus in N.Y.C.: Region Is Now an Epicenter of the Pandemic*, The New York Times (Mar. 23, 2020), https://www.nytimes.com/2020/03/22/nyregion/Coronavirus-new-York-epicenter.html?action=click&module=Spotlight&pgtype=Homepage.
[6] *At Novel Coronavirus Briefing, Governmor Cuomo Declares State of Emergency to Contain Spread of Virus*, New York State (Mar. 11, 2020), https://on.ny.gov/2TKzIoz.
[7] *DeBlasio Declares State of Emergency in NYC, and Large Gatherings Are Banned*, The New York Times (Mar. 12, 2020), https://www.nytimes.com/2020/03/12/nyregion/coronavirus-new-york-update.html
[8] *Novel Coronavirus (COVID-19),* New York State Department of Health (Mar. 21, 2020), https://on.ny.gov/2vfFQvy (updating regularly).
[9] President Donald J. Trump Approves Major Disaster Declaration for New York, FEMA (Mar. 20, 2020), https://www.fema.gov/news-release/2020/03/20/president-donald-j-trump-approves-major-disaster-declaration-new-york.
[10] *1st fed inmate tests positive for coronavirus*, A.P. News (Mar. 21, 2020), https://apnews.com/ec49cc7f4d1b00bc5010dfb6d935e042.
[11] *Id.*
[12] Frank G. Runyeon, *Prison Says It Tested Just 2 More Inmates Despite Virus Cases*, Law 360 (Apr. 1, 2020), https://www.law360.com/access-to-justice/articles/1259489/prison-says-it-tested-just-2-more-inmates-despite-virus-cases

*evidence that the facility was not unsafe for ailing inmates nearing their release dates.*" (emphasis added). As of April 3, 2020, only 7 of the MDC's 1,700 inmates have been tested for coronavirus, two of those tested positive; five MDC staff members have also tested positive.[13]

The effect on the population at MDC remains to be seen, but as the chief physician at Rikers Island cautioned, "A storm is coming."[14] Without a doubt, the outbreak of the virus in congregate environments, like cruise ships and nursing homes, provides a dire warning about what could soon happen in prisons.[15] Coronavirus is highly contagious. On average, one person with the coronavirus will infect between two to three other individuals.[16] But incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe."[17] Inmates cycle in and out of BOP pretrial facilities from all over the world and the country, and people who work in the facilities leave and return daily, without screening or testing. That is why "prisons are petri dishes for contagious respiratory illnesses,"[18] they present an ideal environment for COVID-19 to spread quickly.

This risk is heightened by the particular circumstances at the MDC Brooklyn, the largest federal pre-trial detention center in the United States. As noted in the attached affidavit by Dr. Jonathan Giftos, Exhibit A, a doctor specializing in the care of incarcerated and homeless people, the size of the population and the conditions of confinement at the MDC "increase the risk of infection substantially because it is impossible for inmates to maintain a 6-foot distance from others, to avoid large groups, or to implement sufficient hand-washing and sanitization of surfaces." Ex. A, ¶ 15. Hence, Mr. Leonard cannot effectively practice regular hand hygiene or effectively socially distance himself from other inmates as the CDC cautions every person in the United States to do to stop COVID-19's spread. Moreover, the surfaces in the housing unit are not sanitary. The inmates eat in large groups on common tables that are cleaned only irregularly.

Perhaps even more problematic, the MDC has not stopped admitting new inmates. With each additional arrest comes increased risk of spreading the virus in the MDC. Individuals who are newly arrested and potentially exposed to coronavirus, if they are not symptomatic, will be

---

[13] *Report from the Bureau of Prisons regarding the Metropolitan Detention Center and Metropolitan Correctional Center*, Coronavirus (COVID-19) Information, Eastern District of New York (Apr. 3, 2020), https://img.nyed.uscourts.gov/files/reports/bop/20200403_BOP_Report.pdf
[14] *'A Storm Is Coming': Fears of an Inmate Epidemic as the Virus Spreads in the Jails*, The New York Times (Mar. 21, 2020), https://www.nytimes.com/2020/03/20/nyregion/nyc-coronavirus-rikers-island.html.
[15] Matthew J. Akiyama, M.D., Anne C. Spaulding, M.D., and Josiah D. Rich, M.D., *Flattening the Curve for Incarcerated Populations—Covid-19 in Jails and Prisons*, The New England Journal of Medicine (Apr. 2, 2020), attached hereto as Exhibit B.
[16] *The average coronavirus patient infects at least 2 others, suggesting the virus is far more contagious than flu*, Business Insider (Mar. 17, 2020), https://www.businessinsider.com/coronavirus-contagious-r-naught-average-patient-spread-2020-3.
[17] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (Mar. 2, 2020), at https://bit.ly/2W9V6oS.
[18] *Letters to the Editor: A prison doctor's stark warning on coronavirus, jails and prisons*, Los Angeles Times (Mar. 20, 2020), https://www.latimes.com/california/story/2020-03-20/prison-doctors-stark-warning-on-coronavirus-and-incarceration. *See also* Joseph A. Bick, Infection Control in Jails and Prisons. *Clinical Infectious Diseases* 45(8):1047-1055, at https://doi.org/10.1086/521910.

brought into the facility and "quarantined" on a unit with other inmates. There, they are held with the existing population, potentially transmitting COVID-19 to a populace held in close quarters with unsanitary conditions. These conditions are ripe for the spread of infection. For example, the individual who tested positive for coronavirus at the MDC on March 21st was in the facility for days before becoming symptomatic.[19] During that time, he had contact with inmates from both MCC and MDC (when he was in the courthouse cellblock), the U.S. Marshals, and BOP staff. Because the MDC has only tested *seven* inmates, it is unclear to what extent the virus may have spread throughout the facility.

If the virus does spread throughout the facility, the MDC cannot provide adequate medical treatment. The MDC has only three doctors for all 1,700 inmates, no medical ward, and not a single ventilator. If an inmate becomes symptomatic (and is not too fearful to report it), they are watched, given Tylenol, and confined to their cell. If an inmate becomes severely ill, they will be transferred to local hospitals, which are already overwhelmed with cases.

Given what we know about COVID-19 and the MDC—in particular, the lack of any meaningful testing—the BOP's attempts to contain the virus may unfortunately be futile. This Court should not wait for confirmation that the virus has spread before taking action to protect Mr. Leonard's health.

       iii.   *The Risks Of COVID-19 Are An Appropriate Basis for Temporary Release*

The judiciary has begun to recognize and address this exceptional and unprecedented crisis. The Magistrate Judges in our courthouse have begun to consider the risks of COVID-19 in every bail hearing and release previously-detained defendants, even in quite serious cases, based largely upon the risk to them posed by detaining them at MDC. *See, e.g.*, *United States v. Juan Plasencia,* 20-mj-205 (SJB) (releasing defendant charged with illegal possession of a firearm, through a joint stipulation of the parties, after bail was previously denied) (Mar. 23, 2020); *United States v. Joanna DeAlba,* 19-CR-563(DLI) (releasing previously detained defendant due to medical conditions to NYC shelter) (Mar. 23, 2020); *United States v. Eli*, 20-CR-50 (RJD) (RER) (releasing, over government's objection, defendant charged with multiple robberies involving guns and drugs, because of COVID risk) (Mar. 24, 2020); *United States v. Juan Plasencia*, 20-MJ-205 (SJB) (March 23, 2020); *see also United States v. Barrett*, 19-CR-436 (KAM) (Mar. 13, 2020).

So too in the Southern District have the judges begun to view the bail calculus for defendants who were previously detained to have shifted in light of COVID-19. After having remanded defendant Dante Stephens less than two weeks earlier, Judge Nathan reversed herself "in light of circumstances that have changed since the March 6 hearing," namely, "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic." *United States v. Stephens*, 15-CR-95 (AJN) (Mar. 19, 2020). In setting bail, Judge Nathan noted that "[a] comprehensive view of the danger the Defendant poses to the community requires considering

---

[19] *1st fed inmate tests positive for coronavirus*, A.P. News (Mar. 21, 2020), at https://apnews.com/ec49cc7f4d1b00bc5010dfb6d935e042.

all factors," including COVID-19. *Id.* Similarly, on March 19, 2020, the threat of coronavirus led Judge Ramos to release a formerly detained individual on bail. *See United States v. Santiago Ramos*, 20-CR-04 (ER). *See also United States v. Baker*, 20-CR-125 (KMK) (Mar. 24, 2020); *United States v. Lopez*, 19-CR-323 (JSR) (March 23, 2020); *United States v. Almaleh*, 17-CR-25 (NSR) (Mar. 22, 2020); *United States v. Vizzari*, 19-CR-767 (VSB) (Mar. 20, 2020); *United States v. Brandon*, 19-CR-644 (GBD) (Mar. 19, 2020).

### iv. Sixth Amendment Demands Mr. Leonard's Release

The Sixth Amendment right to counsel is the cornerstone of our adversarial system of criminal justice. In recognition of this vital right, BOP regulations instruct that detention center wardens "*shall provide* the opportunity for pretrial inmate-attorney visits on a seven-days-a week basis." 28 C.F.R. § 551.117(a) (emphasis added). Mr. Leonard has been denied his Sixth Amendment right to assistance of counsel since the BOP suspended legal visitation on March 13, 2020.

A detention facility violates the Sixth Amendment when it "unreasonabl[y] interfere[s] with the accused person's ability to consult counsel." *Benjamin v. Fraser*, 264 F.3d 175, 185 (2d Cir. 2001). In *Benjamin,* the Second Circuit held that New York City correctional facilities violated the right to counsel when defense attorneys "routinely face[d] unpredictable, substantial delays in meeting with clients" and were "forced to wait between 45 minutes and two hours, or even substantially longer, after arriving at a facility to see a client." 264 F.3d at 179. Here, the MDC Brooklyn has violated the right to counsel by abruptly cancelling legal visits altogether without offering any meaningful alternative.

Given the increasing severity of the pandemic, the BOP's denial of Mr. Leonard's right to counsel will likely continue for several weeks.

### D. Conclusion

For all these reasons, the Court should temporarily release Mr. Leonard to protect his physical health and reduce the MDC's population to a level that allows for distancing and monitoring by corrections officers and medical staff. If released, Mr. Leonard can temporarily reside with his wife and son at their home in New Jersey.

Thank you for your consideration of this matter.

Respectfully submitted,

*/s/*
Leticia M. Olivera
Federal Defenders of New York, Inc.

cc: Andrew Grubin, Assistant U.S. Attorney