

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

WK:ADG
F. #2018R00322

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 10, 2020

By ECF

The Honorable William F. Kuntz, II
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Raymond Leonard
      Criminal Docket No. 19-365 (WFK)

Dear Judge Kuntz:

  The government respectfully submits this letter opposing the defendant Raymond Leonard's motion for temporary release pursuant to Title 18, United States Code, Section 3142(i), as a result of the current COVID-19 situation, as well as the defendant's assertion that his Sixth Amendment right to counsel has been violated. The defendant also requests the appointment of new counsel and objects to the exclusion of time under the Speedy Trial Act until September 2020. For the reasons set forth below, the defendant's request for temporary release should be denied. The government agrees that Federal Defenders should be relieved and new counsel appointed, and respectfully submits that time should continue to be excluded until a June 2020 control date.

I. Background

  The defendant is charged by indictment, dated August 13, 2019, with illegal reentry into the United States following his commission of an aggravated felony in violation of Title 8, United States Code, Sections 1326(a) and (b)(2). The defendant is a citizen and national of Guyana. While living in New York, the defendant sustained multiple felony and misdemeanor convictions in violation of New York State Penal Law ("N.Y.P.L.").

 A. Criminal History

  In 1987, the defendant was convicted of criminal possession of stolen property in the fourth degree in violation of N.Y.P.L. § 165.45 and was sentenced to 30 days'

imprisonment. In April 1990, the defendant was convicted of criminal mischief in the fourth degree in violation of N.Y.P.L. § 145.00 and was sentenced to six months' imprisonment. In May 1990, he was convicted of attempted possession of burglar's tools in violation of N.Y.P.L. §§ 110 and 140.35, and was sentenced to 90 days' imprisonment. In July 1990, the defendant was convicted of the unauthorized use of a motor vehicle in the third degree in violation of N.Y.P.L. § 165.05 and was sentenced to six months' imprisonment. In 1995, he was convicted of attempted assault in the second degree in violation of N.Y.P.L. §§ 110 and 120.05, and was sentenced to 18 months to three years' imprisonment. Finally, in 1996, the defendant was convicted of possession of burglar's tools in violation of N.Y.P.L. § 140.35 and was sentenced to seven months' imprisonment.

In December 2002, the defendant was ordered removed from the United States. However, the defendant was not located and physically removed until March 2010. In 2009, before the defendant was removed, he was convicted in New Jersey of possession of a controlled substance analogue in the third degree, in violation of New Jersey Statute Annotated Section 2C:35-10, and was sentenced to five years' probation.

Sometime between the defendant's 2010 removal and September 2017, the defendant illegally reentered the United States. On September 8, 2017, the defendant was arrested in Brooklyn, New York, by the New York City Police Department ("NYPD"), and charged with multiple offenses, including narcotics possession. The defendant was released pending a court date the following month. However, the defendant failed to appear and a bench warrant was issued for his arrest. During the time that the defendant has been in the United States, seven different individuals have received orders of protection against him, including two orders that are still active.

A fingerprint comparison revealed that the individual removed by U.S. Immigration and Customs Enforcement ("ICE") officers in 2010 is the same person whom the NYPD arrested in 2017, the defendant. On July 18, 2019, ICE officers arrested the defendant for illegal reentry pursuant to a federal complaint and arrest warrant.

B. Procedural Posture

At the defendant's initial appearance in federal court, the defendant did not propose a bail package and the Honorable Steven M. Gold ordered him detained pending trial with leave to reapply for bail. (ECF No. 5). The defendant has never—even now, in connection with his application to be released—proposed a bail package for the government's consideration.

On February 21, 2020, the Court held its third status conference in this case. The Court granted the defendant's motion to appoint new counsel to represent him. The Court also noted that it had previously designated the action a complex case pursuant to 18 U.S.C. § 3161(h)(1)(A). The Court excluded time under the Speedy Trial Act until the following status conference, scheduled for April 8, 2020, both on the basis that the case was

complex and to give new defense counsel time to review discovery and engage in plea negotiations with the government.

On March 31, 2020, the Court adjourned the April 8, 2020 status conference until September 8, 2020, and excluded time in the interim. As bases for the exclusion of time, the Court cited its previous complex case designation and Chief Judge Roslynn R. Mauskopf's Administrative Order 2020-06 excluding time in all criminal matters until April 28, 2020.

On April 6, 2020, the defendant filed the instant motion ("Motion" or "Def. Mot.") primarily requesting (1) his temporary release due to the potential that he may catch COVID-19 while incarcerated at the Metropolitan Detention Center ("MDC") and (2) the appointment of new counsel.

II. The Defendant Is A Risk of Flight and Should Not be Granted Bail

The defendant asks the Court for his temporary release under 18 U.S.C. § 3142(i), but fails to address his risk of flight. In the pre-trial context, the government bears the burden of showing that the defendant should be detained by showing a preponderance of the evidence that the defendant is a flight risk. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001). In making a bail determination, courts are required to consider (1) "the nature and circumstances of the offense charged"; (2) the "weight of the evidence against" the defendant; (3) the "history and characteristics" of the defendant, including his "criminal history"; and (4) "the nature and seriousness of the danger . . . posed by the defendant's release." 18 U.S.C. § 3142(g).

First, the nature and circumstances of the instant offense are serious. 18 U.S.C. § 3142(g)(1). The defendant is charged with illegally reentering the country after having been removed following his commission of an aggravated felony. Here, that felony was attempted assault. Furthermore, as set forth above, the defendant was found in the United States after being arrested for additional crimes. The defendant did not illegally reenter the country and then otherwise abide by the law, but instead continued to commit crimes. For the instant offense, the defendant is facing up to 20 years in prison, giving him a strong incentive to flee.

Second, the weight of the evidence against the defendant is strong. 18 U.S.C. § 3142(g)(2). A fingerprint comparison shows that the defendant is the same individual previously removed from the United States. Third, the defendant's history and characteristics strongly suggest that he poses a risk of flight. 18 U.S.C. § 3142(g)(3). His lengthy criminal history, illegal entry into the country and prior inability to comply with conditions of release all demonstrate a flagrant disregard for court orders. Moreover, the defendant does not bother to offer any assurances to the Court that the defendant will abide by future Orders. Finally, the defendant poses a danger to the community and others should he be released. 18 U.S.C. § 3142(g)(4). Seven orders of protection have been issued against him and his criminal history includes some violent conduct, including attempted assault.

3

For these reasons, the defendant should continue to be detained until the resolution of his case.

III. <u>Temporary Release is Not Warranted Under the "Compelling Reason" Clause</u>

Rather than proposing a bail package or addressing his flight risk, the defendant argues that the existence of COVID-19 is a "compelling reason" for release under 18 U.S.C. § 3142(i). The defendant's request should be denied because he fails to make any showing of how he specifically qualifies for Section 3142(i) relief.

Section 3142(i) provides that a "judicial officer may, by subsequent order, permit the temporary release of [a] person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." Certain extreme medical circumstances may present a "compelling reason" that could warrant a highly circumscribed release. As the Honorable Nicholas G. Garaufis recently noted in a decision rejecting an application similar to the instant motion, "[t]his provision has been used sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." <u>United States v. Hamilton</u>, No. 19-CR-54-01 (NGG), 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020) (citations omitted). A defendant has the burden of showing that temporary release is 'necessary ...' under Section 3142(i)." <u>See United States v. Dupree</u>, 833 F. Supp. 2d 241, 246 (E.D.N.Y. 2011). "In considering whether there is a 'compelling reason' for a defendant's release under this provision, a court must 'balance the reasons advanced for such release against the risks that were previously identified and resulted in an order of detention. In turn, whether temporary release under § 3142(i) is proper requires the individualized analysis of the facts of each case.'" <u>United States v. Chambers</u>, 20-CR-135 (JMF), 2020 WL 1530746, at *1 (S.D.N.Y. Mar. 30, 2020) (quoting <u>United States v. Cox</u>, No. 19-CR-271 (RFB) (VCF), 2020 WL 1491180, at *2 (D. Nev. Mar. 27, 2020)).

Neither the defendant's brief nor the attached affidavits provide any reason why this defendant warrants temporary release. The defendant, who is 49 years old, does not claim that he has any medical conditions that place him in a higher-risk category for COVID-19. Nor does he assert any other factor that puts him at a heightened risk of COVID-19. Rather, the defendant claims that the general risks posed by it to MDC inmates is a "compelling reason" for his release. It is not.

The United States Bureau of Prisons ("BOP") has implemented national measures to mitigate the spread of COVID-19 within prisons. <u>See</u> <u>Federal Bureau of Prisons COVID-19 Action Plan</u>, <u>available at</u> https://www.bop.gov/resources/news/20200313_covid-19.jsp. These measures, which have been implemented at the MDC, include the following:

- <u>Suspension of all social and legal visits</u>: Social visits and legal visits have been suspended for 30 days, although confidential attorney calls are being provided. Inmates will be provided additional inmate telephone minutes each month.

4

- Inmate movement: All inmate facility transfers have been suspended for 30 days, with exceptions permitted for forensic studies or medical or mental health treatment.

- Screening and testing of inmates: All newly-arriving BOP inmates are screened for COVID-19 exposure risk factors and symptoms. Inmates with exposure risk factors are quarantined. Any inmate currently in BOP custody exhibiting symptoms consistent with COVID-19 will be assessed by the institution's health services staff and placed in medical isolation. The remainder of the inmates in his or her unit will be quarantined to ensure that additional inmates do not develop symptoms. The inmate in medical isolation will be evaluated by medical staff at least twice per day, and the inmates on a medically-quarantined unit will have their temperature checked twice per day. In addition, inmates will be tested for COVID-19 on a case-by-case basis in accordance with local health authority protocols.

- Modified Operations: The BOP is implementing modified operations nationally to maximize social distancing and limit group gatherings in BOP facilities, among other modifications specific to each facility.

Moreover, based on an April 9, 2020 letter from the Metropolitan Correctional Center ("MCC") and MDC to the Honorable Mauskopf, the government is aware of the following additional measures that the MDC has taken in light of COVID-19:

- Staff are screening each staff member who enters the facility, including temperature scans.

- Medical staff are screening new inmate arrivals to the facility, including temperature scans. Inmates with a temperature greater than or equal to 100.4 degrees, or overt respiratory symptoms, are placed in isolation. New arrivals with a temperature of less than 100.4 degrees are placed in quarantine for 14 days as a precautionary measure.

- Any inmate currently in BOP custody who presents COVID-19 symptoms is assessed by the institution health services staff. An inmate exhibiting symptoms consistent with COVID- 19 will be placed in isolation. The remainder of the inmates on his or her unit will be quarantined to ensure additional inmates do not develop symptoms. The inmates' medical isolation will be evaluated by medical staff at least twice a day, and the inmates on a medically quarantined unit will have their temperature checked twice a day.

- Inmate orderlies are cleaning the common areas of the institution, and every inmate has been reminded and instructed to continue to wipe down and sanitize their cells.

- Unit team staff are available on a daily basis for inmates to raise issues concerning food, property and medical care.

Effective on April 1, 2020, the BOP implemented additional procedures to ensure the safety and wellbeing of inmates, including:

- For a 14-day period, inmates in every BOP institution will be secured in their assigned cells/quarters to decrease the spread of the virus.

- To the extent practicable, inmates will still have access to programs and services that are offered under normal operating procedures, such as mental health treatment and education.

- The BOP, in conjunction with the United States Marshal's Services, is working to significantly decrease incoming movement to all BOP facilities.

Because the defendant is not uniquely situated with respect to risk from COVID-19, his general circumstances do not constitute a "compelling reason" for his release, nor overcome the flight risk he would pose if released. Indeed, this is the conclusion reached by multiple courts in this district and the Southern District of New York rejecting applications for bail in cases based on generalized assertions relating to COVID-19. See, e.g., United States v. Scorcia, 19-CR-442 (ILG), ECF No. 254 (E.D.N.Y. Mar. 27, 2020) (ruling that court had already determined the defendant was a danger to the community and declining to release the defendant based on COVID-19 situation for 54-year-old who cited poor health and claimed restrictions at MDC interfered with his ability to prepare a defense); United States v. Amato, 19-CR-442 (ILG), ECF No. 237 (E.D.N.Y. Mar. 20, 2020) (ruling that the court had already determined defendant was a danger to the community and declining to release 61-year old defendant with asthma based on COVID-19 situation); Hamilton, 19-CR-54-01 (NGG), 2020 WL 1323036, at *2 (rejecting temporary release from MDC because, among other reasons, Hamilton did not make any showing that he falls within a higher-risk cohort should he contract COVID-19, and noting BOP's efforts to mitigate infection); United States v. Chambers, 20-CR-135 (JMF), 2020 WL 1530746, at *1 (S.D.N.Y. Mar. 30, 2020) (rejecting defendant's argument for temporary release due to his asthma and increased risk related to COVID-19); United States v. Marte, 19-CR-795 (SHS), 2020 WL 1505565 (S.D.N.Y. Mar. 30, 2020) (finding that in the absence of any evidence that Marte had a special condition making him substantially vulnerable to COVID-19, the pandemic alone, which is affecting the community in its entirety, is not a compelling reason warranting release); United States v. Steward, 20-CR-052 (DLC), 2020 WL 1468005, at *1 (S.D.N.Y. Mar. 26, 2020) (finding that existence of COVID-19 alone was not a "compelling reason" for release).

The cases that the defendant cites for support are easily distinguishable. First, five of the cases involved facts inapposite to the instant case and bond applications to which the government consented. See United States v. Joanna DeAlba, 19-CR-563 (DLI) (SJB) (E.D.N.Y. Mar. 27, 2020) (releasing previously detained defendant, on consent of the parties,

due to preexisting medical conditions and on a $50,000 bond and GPS location monitoring); United States v. Baker, 20-CR-125 (KMK), ECF No. 22 (S.D.N.Y. March 24, 2020) (releasing defendant on agreed-upon bond by the parties); United States v. Juan Plasencia, 20-mj-205 (SJB) (E.D.N.Y. Mar. 23, 2020) (releasing defendant, through joint stipulation of the parties, on a $50,000 bond and GPS location monitoring); United States v. Almaleh, 17-CR-25 (NSR) (S.D.N.Y. March 22, 2020) (releasing defendant on agreed-upon bail package in bank fraud case where one defendant fell into at least three high-risk categories for COVID-19 and circumstances had changed regarding basis for a second defendant's detention); United States v. Vizzari, 19-CR-767 (VSB) (S.D.N.Y. March 20, 2020) (releasing defendant on agreed-upon bail package where the defendant's antiretroviral medication was less effective and defendant suffered from emphysema, COPD, HIV and the presence of a potential mass or nodule on his right lung).

The defendant also cites United States v. Barrett, 19-CR-436 (KAM) (E.D.N.Y.), for the proposition that "[t]he Magistrate Judges in our courthouse have begun to consider the risks of COVID-19 in every bail hearing and release previously-detained defendants, even in quite serious cases, based largely upon the risk to them posed by detaining them at MDC." (Def. Mot. at 5). The undersigned has spoken to the assistant U.S. attorney prosecuting Barrett, a health care fraud case, and has confirmed that the bail application in that case, to which the government consented, was not related to COVID-19.

The defendant also cites United States v. Stephens, 2020 WL 1295155, 15-CR-95 (AJN) (S.D.N.Y. March 19, 2020). In Stephens, the first basis offered by the district court for reversing the pretrial detention order was that "the strength of the primary evidence relied upon by the Government to demonstrate the danger the Defendant poses to the community has been undermined by new information not available to either party at the time of the [original detention hearing]" and that the new information "indicates that the Government's case is weaker than it believed to be [at the original detention hearing]." Id. at *1. Notably, the defendant there faced a violation of supervised release charge, id., and his supervised release hearing was scheduled to occur within the week. Thus, the term of the temporary release was quite short and based, not on a "compelling reason," but because release was necessary for preparation of the person's defense. Id. The defendant here, whose trial is not imminent, is not on similar footing.

Further, several of the cases cited by the defendant involved defendants who demonstrated how their situation was unique and/or do not have publicly accessible opinions. However, none of the cases support the proposition that a defendant should be released from prison based on a general concern of COVID-19. See, e.g., United States v. Lopez, 19-CR-323 (JSR) (S.D.N.Y. March 26, 2020) (declining to remand a defendant already out on bond, but instead imposing additional restrictions, including home incarceration); United States v. Eli, 20-CR-50 (RJD) (RER) (E.D.N.Y. Mar. 24, 2020) (releasing defendant with preexisting medical condition on $150,000 bond); United States v. Santiago Ramos, 20-CR-04 (ER), ECF No. 21 (S.D.N.Y. March 19, 2020) (declining to remand a defendant already out on bond for non-violent wire fraud scheme, but instead imposing additional bond restrictions).

In sum, the defendant has failed to carry his burden of showing why he is entitled to relief under Section 3142(i).

IV. <u>Release is Not Warranted Under The Sixth Amendment</u>

The defendant next argues that the Court should release him on bail because of a purported interference with his Sixth Amendment right to counsel since the BOP suspended legal visitation on March 13, 2020. (Def. Mot. at 6). However, the defendant fails to specify any inability to communicate with his attorney. The Court should reject the defendant's attempt to use the BOP's mitigation efforts, principally the limitations on legal visits, to suggest they create circumstances justifying release. Furthermore, the defendant ignores the fact that inmates have been provided additional telephone minutes. Indeed, given the restrictions in effect in New York limiting person-to-person contact, even if the defendant were no longer in custody, he and his counsel would still need to communicate by telephone.

The defendant has not shown any significant, long-term infringement on his ability to consult with his attorney, much less provided a reason to believe the efficacy of his defense has been adversely impacted. He also has not demonstrated that the infringements put in place by the BOP do not serve and further a "legitimate penological interest[]." <u>Cf. Overton v. Bazzetta</u>, 539 U.S. 126, 131–32 (2003) (upholding restrictions on prison visitation rights). They do serve such an interest, which is protecting the health of people like the defendant and the many employees who work at the MDC.

V. <u>The Defendant Should Be Appointed New Counsel and Time Should Continue to Be Excluded Until The Next Status Conference</u>

As previously stated, the Court has already granted the defendant's request to appoint CJA counsel. The government respectfully requests that the Court appoint the counsel, or if more appropriate, order the duty magistrate judge to appoint counsel so that the parties can negotiate a plea resolution to the case ahead of the next status conference.

By way of background, on March 6, 2020, Chief Judge Mauskopf issued Administrative Order 2020-06, excluding time in all criminal matters from March 16, 2020 to April 28, 2020, finding that the ends of justice served by taking such action outweigh the interests of the parties and the public in a speedy trial. The Order does not require the consent of the defendant.

Therefore, the government respectfully requests a control date for a status conference in June at a date and time convenient for the Court. Additional reasons justify the exclusion of time until a June 2020 status conference. In particular, the new defense counsel will require time to review discovery, decide whether to make motions on behalf of the defendant and negotiate a potential plea resolution with the government.

VI.	Conclusion

      For the foregoing reasons, the government respectfully requests that (1) the order of detention remain in effect, (2) new counsel be appointed for the defendant and (3) a status conference be scheduled for a date and time convenient for the Court, in June 2020, for new counsel to make his or her initial appearance before the Court.

                Respectfully submitted,

                RICHARD P. DONOGHUE
                United States Attorney

By:	      /s/
                Andrew D. Grubin
                Assistant U.S. Attorney
                (718) 254-6322

cc:	Leticial Olivera, Esq., Defense Counsel (by ECF and E-mail)
    Clerk of the Court (WFK) (by ECF and E-mail)