UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA

        -v-                                      19 Cr 365 (WFK)

RAYMOND LEONARD,
            Defendant.

-------------------------------------------------------x

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION

Leonard files this Supplemental Memorandum with the permission of the Court, and incorporates in this Supplemental Memorandum the facts stated previously in his motion papers which seek to dismiss the Indictment.

The Indictment charges Leonard with Illegal Reentry:

"On or about September 8, 2017, within the Eastern District of New York, the defendant RAYMOND LEONARD, an alien who had previously been removed and deported from the United States after a conviction for the commission of an aggravated felony, was found in the United States, without the Secretary of the United States Department of Homeland Security and the United States Attorney General having expressly consented to such alien's applying for admission."

In May 1987, Leonard was convicted of Criminal Possession of Stolen Property [PL 165.45], a felony, in Nassau County and was sentenced to 30 days imprisonment concurrent with another sentence. Criminal Possession of stolen property in 1987 was not then designated an aggravated felony. It was not until 1996, that Congress amended the Immigration Act to

categorize Criminal Possession of Stolen Property as an Immigration Aggravated Felony [8 USC @ 1101 (a)(43)(G)]. However, amendments to the list of Aggravated felonies cannot be applied retroactively. See, Vartelas v. Holder, 132 S.Ct. 1479, 1484 (2012). In February 1995, Leonard pled guilty to attempted assault in the second degree, a felony, in violation of NYPenal Law § 110/120.05, and was sentenced to 18 months - 36 months imprisonment. Leonard plead guilty to the generic statute, and not any subdivision thereof. Leonard's Immigration Removal proceedings were initiated on November 24, 1995, after his conviction for attempted Assault. The Immigration Judge's Decision is dated December 17, 2002. Therein at page 8, the Judge ruled Leonard was "not an aggravated felon." The Government does not really dispute this finding now. Leonard was not removed and deported from the United States after a conviction for the commission of an aggravated felony. The instant Indictment must be dismissed as factually insufficient. Leonard was not removed from the USA at the time he had an Aggravated **felony offense.**

Further, the underlying Immigration Removal Order was unlawful. Title 8 U.S.C. § 1326(d) permits collateral attack of a removal order in a criminal proceeding when the defendant: (1) exhausted his administrative remedies; (2) was denied an opportunity for judicial review; and (3) can demonstrate that the entry of the order was fundamentally unfair. Consistently, Leonard also moves to dismiss the Indictment based on the decision of the United States Supreme Court in United States v. Palomar-Santiago, 593 U.S. ___ (2021). There the Supreme Court ruled that section 1326, criminalizing unlawful reentry, provides that a collateral challenge to the underlying deportation order may proceed if the noncitizen demonstrates that "any administrative remedies that may have been available" were exhausted; "the opportunity for judicial review" was lacking, and "the order was fundamentally unfair."

Leonard's criminal history as it is relevant to the underlying Immigration Removal proceedings is as follows. In February 1987, the defendant was convicted in Queens County of criminal possession of stolen property in the fourth degree, a as a Youthful Offender, in violation of New York Penal Law 165.45, and was sentenced to five years probation. Under New York State law, and Immigration law a youthful offender adjudication is not a judgment of conviction for a crime or any other offense. See N.Y. Penal Law @720.35.

In May 1987, the defendant was convicted of that same offense in Nassau County and was sentenced to 30 days imprisonment concurrent to another sentence. On November 24, 1995, the Immigration and Naturalization Service first commenced Removal proceedings against Leonard, and charged Leonard in an OSC with being subject to removal pursuant to Section 241(a)(2)(A)(ii) of the Immigration and Nationality Act (INA), which provided in pertinent part an alien convicted, any time after entry, of two Crimes Involving Moral Turpitude ["CIMT"s] not arising out of a single scheme of criminal misconduct is deportable.

In February 1995, the Leonard pled guilty to attempted assault in the second degree, a felony, in violation of NYPenal Law § 110/120.05, and was sentenced to 18 months - 36 months imprisonment. Leonard plead guilty to the generic statute @120.05, and not any subdivision thereof.

The subsequent OSC dated November 24, 1995, charged Leonard with 7 specifically listed factual allegations: (1) he was not a United States citizen or national; (2) he was a citizen and native of Guyana; (3) he entered the United States in New York on November 21, 1982; (4) he was admitted as a lawful permanent resident; (5) in March 1987, he was convicted in Nassau County for criminal possession of stolen property in violation of New York law;4 (6) in February 1995, and he was convicted in Queens County of attempted assault in the second degree in

violation of New York law; and (7) the aforementioned crimes did not arise out of a single scheme of criminal misconduct. That was the only Order to Show Cause involving Leonard adjudicated in the Immigration Court in the Removal proceeding. In the Immigration Court Leonard's attorney admitted to the seven allegations contained in the OSC and conceded deportability as charged by the OSC, but stated that he intended to make certain applications for relief from deportability. At a subsequent Immigration Court proceeding, on July 10, 1997 [transcript attached], the defendant's attorney advised the IJ that while his client admitted to the allegations, he no longer wanted to concede deportability because the criminal possession convictions were not CIMTs for Immigration purposes. The IJ then invited briefing on the issue. In a Prehearing Brief dated September 22, 1997 [attached] submitted to the Immigration Court defendant's Immigration attorney argued that Leonard's 1995 Attempted Assault conviction did not constitute a CIMT because Leonard plead guilty to attempting a generic Assault offense, and an assault under that statute can be committed without moral terpitude. For example Penal Law @ 110/120.05 also charged reckless conduct may give rise to the Assault, and the BIA had never ruled that reckless conduct can be the per se basis for CIMT. See, Matter of Franklin, 20 I&N Dec. 867 (BIA 1994); Matter of Short, 20 I&N Dec. 136 (BIA 1988). The attorney also argued to the Immigration Judge that the Criminal Possession of Stolen Property conviction was also not a CIMT because it could be committed multiple ways, including without the element of moral turpitude.

However, the Immigration Judge never ruled on Leonard's said filed opposition to being charged with CIMTs as listed in the Order to Show Cause. Instead the Oral decision of the IJ dated 12-12-2002, erroneously stated that Leonard admitted each factual allegation contained in the Order to Show Cause and conceded deportability. The Immigration Court Judge was clearly

incorrect, and the Immigration Court records are incorrect.

On December 17, 2002, the IJ formally denied the defendant's Section 212(c) waiver application as a matter of Judicial discretion, and ordered Leonard removed to Guyana based on the charges contained in the filed Leonard OSC. Leonard's attorney's appeal to the BIA was based on the IJ's denial of Section 212(c) relief, because the record was barren of any contest, or submissions concerning the issue that the OSC did not charge crimes amounting to a CIMT. The BIA has long ruled that if an issue is not reflected in the Immigration Court record the BIA will not adjudicate that issue on appeal. Matter of Federenko, 19 I&N Dec. 57, 74 (BIA 1984) Consequently, on March 1, 2004, the BIA affirmed the IJ's ruling and denied the Leonard's appeal on the record in the Immigration Court based on the record before it.

Leonard did not concede Removability. It was not raised on appeal in the BIA because the Immigration Court record was incomplete, and the issue could not have been appealed on the existing record. Alternately, the Immigration Court record was not corrected because of ineffective assistance of Leonard's counsel. The Sixth Amendment to the United States Constitution provides for an accused's right to counsel:

> "in all criminal prosecutions, the accused shall enjoy the right .....
>
> to have the assistance of counsel for his defence."

The right to such assistance in a criminal prosecution means the right to assistance at every stage of the proceeding. United States v. Harrison, 451 F.2d 1013 (2d Cir. 1971); Von Moltke v. Gillies, 332 U.S. 708, 723-24 (1968); United States v. Plattner, 330 F.2d 271, 274 (2d Cir. 1964). That right is amplified by Rule 44 of the Federal Rules of Criminal Procedure which states in section "(a)" thereof:

> "Every defendant who is unable to obtain counsel shall be entitled

>to have counsel assigned to represent that defendant at every stage of the proceedings from initial appearance before the federal magistrate or the court through appeal, unless the defendant waives such appointment."

The importance of the Sixth Amendment right to counsel is highlighted by decisions in Argersinger v. Hamlin, 407 U.S. 25, 31-6 (1972), and Gideon v. Wainwright, 372 U.S. 335, 343-45 (1963). The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard with the assistance of counsel. A defendant requires the guiding hand of counsel at every step in the proceeding against him. Powell v. Alabama, 287 U.S. 45, 68-69 (1932). Like all constitutional guarantees, the right to counsel is more than an illusory promise; it is the right to the effective assistance of counsel. See, e.g., Gaines v. Hopkins, 575 F.2d 1147 (5th Cir. 1978) [failure of court appointed attorney to investigate the defendant's case deprived defendant of effective assistance of counsel]; McKenna v. Ellis, 280 F.2d 592, 599 (5th Cir. 1960) modified, 289 F.2d 928, cert. denied, 368 U.S. 877 (1961) [failure of court appointed attorney to interrogate witnesses and assure presence of witnesses at trial deprived defendant of effective assistance of counsel].

The standard for deciding whether a claim of ineffective assistance of counsel amounts to constitutional deprivations, is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. It is whether the deficient performance of counsel prejudiced the defendant. A defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outctom. Strickland v. Washington, 466 U.S. 668, 694 (1984);

United States v. Cruz, 785 F.2d 399 (2d Cir. 1986). A defendant must show that counsel's performance was deficient, and that deficient performance prejudiced the defense. Maddox v. Lord, 818 F.2d 1058 (2d Cir. 1987). "Prejudice" is defined as an error that works to the actual and substantial disadvantage of a party, infecting the entire proceeding with error of constitutional magnitude. United States v. Frady, 456 U.S. 152 (1982).

Because the record in the Immigration Court was not corrected by his attorney on the issue of Leonard's concession of deportability Leonard lost his appellate rights before the BIA because he was limited in the arguments he could raise for review. Leonard was denied meaningful review of the Order of Removal.

Lastly, the Nassau conviction for Criminal Possession of Stolen Property is not a CIMT. As Leonard previously argued in the Immigration Court, the nature of the crime determines whether it amounts to moral turpitude. Mylius v. Uhl, 210 Fed. 860, 863 (2d Cir. 19140. If the statute includes offenses not inherently involving moral turpitude, then it is not the basis for removal. Robinson v. Day, 51 F.2d 1022 (2d Cir. 1931). Any ambiguity resolving this issue must be resolved in Leonard's favor. Fong Haw Tan v. Phelan, 333 U.S. 6 (1948); Matter of Hou, 20 I&N Dec. 513 (BIA 1992). Possession of stolen property does not necessarily involve moral terpitude. Matter of K-, 2 I&N Dec. 90 (BIA) 1944. The language of the statute is viewed at its minimum, taking into account the "least imaginable acts that it denounces." Matter of C-, 5 I&N Dec. 65, 70 (BIA 1953). The minimum reading of the statute must only reach offenses involving moral turpitude, regardless of the actual details of the misconduct. United States v. ex rel. Guarino v. Uhl, 107 F.2d 399, 400 (2d Cir. 1939). If the scope of the statute includes offenses not inherently involving moral turpitude, then deportability does not attach. Robinson v. Day, 51 F.2d 1022 (2d Cir. 1931); Matter of N, 8 I&N Dec. 466 (BIA 1959).

A categorical review of the crime of Criminal Possession of Stolen Property [PL @ 165.45] as per the requirement stated in Dalton v. Ashcroft, 257 F.3d 200, 204 (2d Cir. 2001) demonstrates the crime can be committed in ways not constituting moral turpitude such as possessing amonia gas to impede its recovery by the owner irrespective of the dollar value of the gas, or by possessing a religious vestment to impede its recovery by the owner.

Lastly, to the extent the Government now argues even if Leonard did not have 2 CIMT's one CIMT was sufficient, Leonard submits this Court's analysis should be based on findings the IJ actually made and not seek out a reason to deny review on which the IJ did not Rely. Passi v. Mukasey, 535 F.3d 98, 100 (2d Cir. 2008) ["Our review is confined to those reasons for denying relief that were adopted by the BIA"].

For the foregoing reasons Leonard moves to dismiss the Indictment:

1. Leonard was not previously Removed from the USA based on the conviction for an Aggravated felony, and the Indictment is factually insufficient;

2. Leonard was not convicted of 2 crimes involving moral turpitude;

3. Leonard did exhausted his administrative remedies, and to the extent it was not done it was because of the ineffective assistance of counsel provided to Leonard in the Immigration Courts, and the resultant prejudice;

4. Leonard was denied a meaningful opportunity for judicial review in order to challenge if the two crimes charged in the OSC involved moral turpitude.

(5) The Removal Order order was fundamentally unfair because Leonard was not convicted of two CIMT offenses, and on appeal he could not raise that issue.

Dated: New York, New York

February 9, 2022.

Submitted by,

B. Alan Seidler

Attorney for Defendant

580 Broadway, room 402

New York, NY 10012

212-334-3131

Filed by ECF