UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

RAYMOND LEONARD,

          Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
19-CR-365 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**
On October 14, 2022, Raymond Leonard ("Defendant") pleaded guilty to illegal reentry in violation of 8 U.S.C. §§ 1326(a) and 1326 (b)(1). The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is sentenced to time served.

## BACKGROUND

On August 13, 2019, a grand jury returned an Indictment charging Defendant with Illegal Reentry in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2). As alleged in the Indictment, on or about September 8, 2017, Defendant, who had been previously removed and deported from the United States after a conviction for the commission of an aggravated felony, was found in the United States without the express consent of the Secretary of the United States Department of Homeland Security and the United States Attorney General. On October 14, 2022, Defendant pleaded guilty to a lesser included offense of the sole count of the Indictment, charging a violation of 8 U.S.C. §§ 1326(a) and 1326 (b)(1).

## DISCUSSION

The Court now sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

**I.**    **Legal Standard**

1

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, No. 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

**II. Analysis**

**A. The History and Characteristics of the Defendant and the Nature and Circumstances of the Offense**

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

1. <u>Family and Personal Background</u>

Defendant was born on July 5, 1970 in Guyana to Lennox Leonard and Salima Kahn. Presentence Investigation Report ("PSR") ¶ 38, ECF No. 71. Defendant's father passed away from leukemia when Defendant was 17 years old. *Id.* Defendant's mother is retired and resides

in New York. *Id.* Defendant has one sibling, who resides in Brooklyn, New York, and with whom he shares a good relationship. *Id.* ¶ 39. Defendant's mother and sibling are both aware of Defendant's conviction and remain supportive of him. *Id.* ¶¶ 39–40.

Defendant was primarily raised by his mother in middle-income circumstances. *Id.* ¶ 40. Defendant reported a good childhood, where all of his basic needs were met and he experienced no abuse. *Id.* However, he struggled to cope after the death of his father. *Id.*

On April 16, 1997, Defendant married Mala Leonard in Queens, New York. *Id.* ¶ 41. Defendant and Ms. Leonard have a 20-year-old son, Brandon Leonard, who resides in Sayreville, New Jersey with his mother. *Id.* Defendant reports good relationships with Ms. Leonard and Brandon, who are both aware of his conviction and remain supportive of him. *Id.*

Ms. Leonard described Defendant as "someone who would give his last meal to a homeless person" and an amazing father. *Id.* ¶ 43. Brandon Leonard describes Defendant as hardworking, knowledgeable, and an amazing father. *Id.* ¶ 44. Defendant's mother described Defendant as a loving person and a wonderful father, who she believes committed the instant offense in order to be present for Brandon. *Id.* ¶ 42.

2. Educational and Employment History

Defendant attended Hillcrest High School in Queens, New York, where he completed the tenth grade. *Id.* ¶ 59. Defendant dropped out of school to pursue schooling in the automotive industry but otherwise received good grades and was not subject to any disciplinary infractions. *Id.* Defendant reported earning his Graduate Equivalency Diploma from a program located in New York, New York, but the Probation Department's search of the New York State High School Equivalency database revealed no record for Defendant. *Id.* ¶ 58. Defendant also attended Apex Technical School in New York, New York, where he received his certification to

3

be an automobile mechanic, but he could not remember when this occurred. *Id.* ¶ 57. At some point in the 2000s, Defendant's employer at the time, German Car Shop, paid for Defendant to participate in Worldpac Training Institute in New Jersey, where he received a certification in control area networking. *Id.*

Defendant worked for German Car Shop in Edison, New Jersey, from 2000 until after his arrest in July 2019. *Id.* ¶ 61. From 2005 until an unknown year when the business closed, Defendant reported he co-owned Mo and Ray Auto Repair in Sayreville, New York with his stepfather. *Id.* ¶ 62. Defendant also reported being employed as an automobile technician at Pinnacle in Sterling, New Jersey, and at Bob Howards Automotive in Mineola, New York, but does not recall the time periods he was employed. *Id.* ¶ 64.

### 3. Prior Convictions

Defendant has twelve prior convictions, which include two convictions for criminal possession of stolen property, two convictions for unauthorized use of a vehicle, two convictions for criminal mischief, and convictions for possessing a forged instrument, possessing cocaine, possessing and attempting to possess burglar tools, and driving while intoxicated. *Id.* ¶¶ 18–29. Defendant was also convicted of attempted assault for an incident that occurred in July 1994, when Defendant and five other individuals punched and kicked a victim about the body, and one of the individuals stabbed the victim twice in the chest. *Id.* Charges also remain pending against Defendant in Kings County Criminal Court, following a traffic stop in September 2017 when Defendant was observed driving while using a cellular device. *Id.* ¶ 33. The officer conducting the stop administered a breathalyzer test which provided a blood alcohol level of .091, and a search of Defendant revealed a bag of alleged cocaine and drug paraphernalia containing alleged cocaine residue. *Id.*

4

### 4. Medical and Mental Health

On an unspecified date Defendant sustained a pinched nerve in his back after he tried to lift a heavy object at work and was hospitalized at John F. Kennedy University Medical Center in Edison, New Jersey. *Id.* ¶ 49. Defendant reports he has largely recovered from this injury, except that his back feels stiff after he sits for long periods of time. *Id.* Defendant has also been advised by his primary care physician that the results of his bloodwork showed concerns with his liver. *Id.* ¶ 50. In 2019, Defendant received a root canal due to pain in his tooth. *Id.* ¶ 51. During his current incarceration term, the cap on his tooth fell off, and Defendant developed an infection. *Id.* He was prescribed antibiotics and has since fully recovered. *Id.* In March 2020, Defendant contracted COVID-19 while incarcerated at the MDC and experienced fever, loss of taste, and cold sweats. *Id.* ¶ 52. Defendant was not provided any medication and was quarantined for 18 days. *Id.* Defendant reports he has mostly recovered but experiences cold sweats, loss of taste, and diminished stamina as he loses his breath quickly after exercising. *Id.* In 2020, Defendant noticed blood spots after a bowel movement, and over time the amount of blood he notices increased. *Id.* ¶ 53. Defendant requested multiple sick calls where tests were done, but he never received the results. *Id.* On one occasion, the medical provider tested his stool and the results were negative for any diseases. *Id.* Defendant reports that after he uses the restroom, there is a "pool" of blood in the toilet, and he experiences dizziness afterwards. *Id.* Due to multiple lockdowns at the prison, Defendant was never referred to a hospital for more testing, and he reports he gave up asking for help and is "scared for his life." *Id.* ¶ 53.

Defendant reported being incarcerated at the MDC has been a traumatic experience, and he has developed anxiety due to the experience as well as his medical issues. *Id.* ¶ 54. Defendant also fears for his potential deportation to a country to which he has never assimilated

5

nor has any ties to, and he believes he will be tortured because that "is what the people do to deportees." *Id.* ¶ 54.

5. Substance Abuse

After the death of his father, Defendant tried marijuana on one occasion but stopped thereafter. *Id.* ¶ 56. Defendant regularly drank alcohol, and reported suffering from an alcohol problem. *Id.* Defendant attended Alcoholics Anonymous in Queens, New York for a few months and would be amenable to substance abuse treatment in the future. *Id.*

6. Nature and Circumstances of the Offense

Defendant was born in Guyana and lawfully entered the United States as a permanent resident on November 21, 1982. *Id.* ¶ 2. On February 14, 1995, Defendant sustained a conviction for Attempted Assault, and was sentenced to 18 months to 3 years of custody. *Id.* As a result of his conviction, Defendant was ordered deported on December 17, 2002 and was removed from the United States on March 23, 2010. *Id.*

At an unknown date, Defendant unlawfully returned to the United States. *Id.* ¶ 3. On September 8, 2017, Defendant was arrested by the New York City Police Department for criminal possession of a controlled substance, unauthorized use of a vehicle, operating a motor vehicle while intoxicated, and operating a motor vehicle on a public highway while using a mobile phone. *Id.* Immigration and Customs Enforcement ("ICE") was subsequently alerted to Defendant's unlawful status in the United States. On February 13, 2018, a federal complaint was filed, and a warrant issued from this district. *Id.*

On July 14, 2019, Defendant was arrested by the Sayreville Police Department in New Jersey and was charged with terroristic threats, unlawful taking means of conveyance, and

obstructing the administration of law. *Id.* ¶ 4. Federal case agents were notified of Defendant's local arrest and arrested Defendant on July 18, 2019. *Id.*

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The instant sentence recognizes the seriousness of the Defendant's offense, justly punishes him for this offense, and will deter others from engaging in similar acts.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pleaded guilty to Illegal Reentry in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(1). For this offense, Defendant faces a maximum term of imprisonment of ten years and a maximum term of supervised release of three years. *See* 18 U.S.C. § 3583(b)(2) and 8 U.S.C. § 1326(a)–(b)(1).

A term of not less than one nor more than five years of probation is also available because the instant offense is a Class C Felony. 18 U.S.C. § 3561(c)(1). If probation is imposed, a fine, restitution, or community service must also be imposed as a condition of probation unless the Court finds that extraordinary circumstances exist that would make such a condition plainly unreasonable. 18 U.S.C. § 3563(a)(2).

Defendant also faces a maximum fine of $250,000.00 under 18 U.S.C. § 3571(b). Probation notes that based on Defendant's financial profile, he appears unable to pay a fine. PSR ¶ 70.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" *Id.* § 3553(a)(4)(A).

The applicable guideline for offenses under 8 U.S.C. § 1326(a) is U.S.S.G. § 2L1.2, which provides a base offense level of 8. After the Defendant was ordered deported or removed from the United States for the first time, he engaged in criminal conduct which resulted in a conviction for a felony offense other than an illegal reentry offense. Therefore, four levels are added pursuant to U.S.S.G. § 2L1.2(b)(3)(D).

As Defendant has clearly demonstrated acceptance of responsibility for the offense, the offense level is reduced by 2 pursuant to U.S.S.G. § 3E1.1(a). Accordingly, the total adjusted offense level is 10. Defendant's criminal convictions result in a criminal history score of one. According to the sentencing table in U.S.S.G. Chapter 5, Part A, a criminal history score of one establishes a criminal history category of I.

Based upon a total offense level of 10 and a criminal history category of I, the Guidelines imprisonment range is six to twelve months. Alternatively, the Court may impose a term of imprisonment of one month followed by a term of supervised release with a special condition requiring five months of community confinement or home detention, pursuant to U.S.S.G. § 5C1.1(c)(2). All parties recommend a sentence of time served.

8

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, which requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), does not apply here.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). This factor does not apply here.

## CONCLUSION

The Court finds that a sentence of time served, with no term of supervised release to follow, is appropriate. The Court also imposes the $100.00 mandatory special assessment but does not impose a fine because the Defendant does not have the ability to pay. This sentence is consistent with and is sufficient but not greater than necessary to accomplish the purposes of § 3553. The Court also expressly adopts the factual findings of the Presentence Investigation Report, barring any errors contained therein and to the extent they are not inconsistent with the Court's sentence.

9

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: December 15, 2022
       Brooklyn, New York